UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

CHRISTOPHER WILLIAMS,                                              **COMPLAINT**

                         Plaintiff,                    Index No.:

                                          <u>Jury Trial Demanded</u>

      -against-

CITY OF NEW YORK,
GRACE GREAVES, Individually,
FURREL CANTEEN, Individually,
SHAEQUANA BRAITHWAITE, Individually,

                        Defendants.

-------------------------------------------------------------------------------X

       Plaintiff CHRISTOPHER WILLIAMS, by his attorney, Jason Leventhal, Esq., complaining of the Defendants, respectfully alleges as follows:

## **Preliminary Statement**

       1.    Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitution of the State of New York and the United States.  Plaintiff also asserts supplemental state law claims.

## **JURISDICTION**

       2.    The action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Eighth and Fourteenth Amendment to the United States Constitution.

       3.    Jurisdiction is found upon 28 U.S.C. §§1331, 1343 and 1367.

## **VENUE**

       4.    Venue is properly laid in the Eastern District of New York under 28 U.S.C. §

1391(b), in that it is the District in which the claim arose.

## JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury of all issues in the matter pursuant to Fed. R. Civ. P. 38 (b).

## PARTIES

6.      At all relevant times, Plaintiff was incarcerated at the Anna M. Cross Center (hereinafter referred to as "AMKC") of the Rikers Island Jail complex located in the City of East Elmhurst, County of Queens, and State of New York.  At all relevant times, Plaintiff was a pre-trial detainee.

7.      Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant CITY OF NEW YORK maintains the New York City Department of Correction (hereinafter referred to as "DOC"), a duly authorized public authority and/or correction department, authorized to perform all functions of a correction department as per the applicable sections of the aforementioned municipal corporation, CITY OF NEW YORK.

9.      That at all times hereinafter mentioned, Defendant GRACE GREAVES was a DOC Captain and supervised Defendants FURREL CANTEEN and SHAEQUANA BRAITHWAITE who were DOC correction officers.

10.     That at all times hereinafter mentioned, the individually named Defendants, were duly sworn correction officers and supervisors of said department and were acting under the supervision of said department and according to their official duties.

11.     That at all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the

2

official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City New York.

12.     Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting within the scope of their employment by Defendant CITY OF NEW YORK.

13.     Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting in furtherance of their employment by Defendant CITY OF NEW YORK.

## FACTS

14.     On January 17, 2016, Plaintiff was imprisoned in the West 19 Lower B-side of the AMKC facility on Rikers Island, located in the City of East Elmhurst, County of Queens, and State of New York.

15.     At approximately 10:00 p.m. on January 17, 2016, Plaintiff was attacked by approximately six inmates in the bathroom of his housing area.  The inmates brutally assaulted Plaintiff for a prolonged time causing him to suffer serious physical including a fractured jaw requiring surgical repair, and a laceration requiring staples to repair.

16.     The inmates assaulted Plaintiff when Defendant CANTEEN abandoned his assigned post leaving the post vacant and Defendant BRAITHWAITE either abandoned her post or otherwise failed to maintain adequate supervision of the housing area.

17.     AMKC is a medium security facility which houses inmates who are awaiting criminal trial or processing.  The AMKC's West 19 Lower B-side is a dormitory style housing area where prisoners are confined but not secured in individual housing units as each inmate is assigned a bed in a large, open room.

3

18.     On January 17, 2016, Plaintiff was imprisoned in the West 19 Lower B-side dormitory with at least 20 other inmates.

19.     Pursuant to New York State's Codes, Rules and Regulations (NYCRR Sec. 7003.2 & 7003.3) DOC officers are required to actively supervise the West 19 Lower B-side housing area by: (1) having the uninterrupted ability to communicate orally with and respond to each prisoner unaided by any electronic or other artificial amplifying device; (2) conducting supervisory visits at 30-minute intervals; (3) having the ability to immediately respond to emergency situations; and (4) providing the continuous occupation of a security post within the West 19 Lower B-side.

20.     At all times on January 17, 2016, a DOC officer was or should have been assigned to the West 19 Lower B-side B-post to provide active supervision of the inmates and thereby to protect inmates from violence and the threat of violence by other inmates.

21.     The West 19 Lower B-side B-post is located within the housing area.

22.     Upon information and belief, Defendant Greaves assigned Defendant CANTEEN to a "cross-tour" on January 17, 2016, as the B-post office for the West 19 Lower B-side and A-side to provide active supervision and to protect inmates from violence and the threat of violence from other inmates.

23.     On January 17, 2017 at approximately 10:00 p.m., Defendant CANTEEN abandoned the B-post for the West 19 Lower B-side, leaving the post vacant.  As a result DOC officers did not provide active supervision to the inmates in the West 19 Lower B-side.

24.     As a result of Defendant CANTEEN's conduct, Plaintiff was violently assaulted and suffered serious physical injuries.

25.     At all times on January 17, 2016, a DOC officer was or should have been

assigned to the West 19 Lower B-side A-post to monitor the inmates and thereby protect inmates from violence and the threat of violence by other inmates.

26.     The West 19 Lower B-side A-post officer is situated outside of the housing area in an enclosed observation post, commonly referred to as "the bubble."

27.     On January 17, 2016 at approximately 10:00 p.m., Defendant BRAITHWAITE was assigned to the West 19 Lower B-side A-post to monitor inmates and thereby protect them from violence and the threat of violence from other inmates.

28.     On January 17, 2016 at approximately 10:00 p.m., Defendant BRAITHWAITE did not adequately monitor the inmates in West 19 Lower B-side.

29.     As a result of Defendant BRAITHWAITE's conduct, Plaintiff was violently assaulted and suffered serious injuries.

30.     On January 17, 2016 at approximately 10:00 p.m., Defendant GREAVES was the assigned supervisor of the inmates in West 19 Lower B-side.

31.     On January 17, 2016, Defendant GREAVES was aware that officers assigned to a cross tour, including Defendant CANTEEN, routinely vacate their posts in one housing area when performing a cross tour in an adjacent housing area.

32.     On January 17, 2016, Defendant GREAVES assigned Defendant CANTEEN to a cross tour and did not conduct supervisory visits at 30-minute intervals.

33.     On and before January 17, 2016, Defendant GREAVES and other DOC Captains and supervisors approved of and ratified the conduct of officers assigned to cross tours who vacated their assigned post in one housing area to perform a cross tour in an adjacent housing area by failing to adequately supervise and discipline those officers to insure that officers maintain active supervision in dorm areas as required by NYCRR Sec. 7003.2 and 7003.3.

5

34.    As a result of Defendant GREAVES'S conduct, Plaintiff was violently assaulted and suffered serious injuries.

35.    From approximately January 7, 2016 through January 17, 2016, DOC officers assigned to the West 19 Lower B-side B-post routinely abandoned their post.

36.    From approximately January 7, 2016 through January 17, 2016, DOC officers assigned to the West 19 Lower B-side B-post often socialized in the bubble with the A-post officer, thereby both officers failed to properly supervise and monitor the housing area to protect inmates from violence and threats of violence.

37.    Upon information and belief, in the months and years before January 17, 2016, DOC officers routinely failed to provide active supervision to dormitory style housing areas in which more than 20 inmates were housed on Rikers Island, including in AMKC and in the West 19 Lower B-side.

38.    DOC officers and supervisors, including the Defendants, were aware that, as a result of their failure to actively supervise dormitory housing areas, inmates on Rikers Island including inmates with gang affiliations controlled the conduct of other inmates on Riker Island by violence and the threats of violence.  For example, inmates would control the 'house jobs,' the use of the phone and television, and would take other inmate's property, and inmates would smoke cigarettes in the dormitory, all conduct in violation of DOC rules.

39.    DOC officers and supervisors, including the Defendants, were aware that, as a result of their failure to actively supervise dormitory housing areas, inmates in the West 19 Lower B-side on January 17, 2016, controlled the conduct of other inmates in the dorm by violence and the threats of violence.  For example, before Plaintiff was assaulted, inmates threatened Plaintiff indicating that they were gang affiliated, attempted to force Plaintiff to give

up his phone time, and said inmates asked Plaintiff to 'sell' his sweatshirt.

40.     From approximately January 7, 2016 to January 17, 2016, at least two inmate-on-inmate assaults occurred in the West 19 Lower B-side when the B-post was abandoned by the assigned DOC officer.

41.     Upon information and belief, in the months and years before January 17, 2016, inmate-on-inmate assaults frequently occurred in jails on Rikers Island, including in AMKC, when DOC officers abandoned active supervision posts within housing areas.

42.     The brutal and prolonged assault of Plaintiff occurred as a result of the intentional, reckless, negligent, and/or deliberate indifference of the Defendant DOC officers and supervisors.

43.     The City and DOC owed a duty of care to safeguard inmates, including Plaintiff, from attacks by fellow inmates.

44.     The duty of care required the DOC and its corrections officers and supervisors to actively supervise Plaintiff and other inmates while in the West 19 Lower B-side dormitory.

45.     The duty of care required the DOC and its corrections officers and supervisors to maintain active supervision of inmates and to consistently monitor inmate behavior in housing dormitories.

46.     The purpose of actively supervising inmates was to prevent inmate-on-inmate assaults.

47.     An inmate-on-inmate attack in a housing dormitory is foreseeable.

48.     The Defendants did not maintain constant contact with Plaintiff and other inmates, did not consistently monitor inmate behavior, and did not continuously occupy a security post within the West 19 Lower B-side dormitory.

49.     The Defendants did not actively supervise Plaintiff and other inmates while they were in the West 19 Lower B-side dormitory.

50.     It was reasonable foreseeable to the Defendants that failing to actively supervise inmates in the West 19 Lower B-side dormitory creates an inherently dangerous environment for inmates and would likely result in inmate-on-inmate violence and assaults thereby causing serious physical injuries to inmates.

51.     Accordingly, the DOC and its corrections officers and supervisors breached its duty of care to safeguard Plaintiff from foreseeable attacks by fellow inmates.

52.     Plaintiff's injuries were a direct result of the Defendants' intentional, reckless, negligent, and/or deliberate indifference, inadequate and/or deliberate failure to supervise inmates in West 19 Lower B-side.

53.     The Defendants knew, had reason to know, and/or should have known that unmanned active supervision observation posts create an inherently dangerous environment for inmates and result in inmate-on-inmate violence and assaults thereby causing serious physical injuries to inmates.

54.     Plaintiff's injuries were a direct result of the Defendants' intentional, reckless, negligent, and/or deliberate indifference, inadequate and/or deliberate failure to supervise inmates in West 19 Lower B-side and failure to intervene while Plaintiff was brutally assaulted.

55.     The aforesaid event is not an isolated incident.  Defendant CITY OF NEW YORK is aware (from lawsuits, prior incidents, including arrests and convictions of correction officers, notices of claims, media coverage, investigations conducted by and complaints filed with the City's Inspector General's Office and Department of Investigation, and from intelligence gathered by Department of Correction officials) that many DOC officers, including the

8

Defendants, are insufficiently trained regarding the proper supervision and protection of inmates, and/or that DOC officers at Rikers Island engage in a custom or practice of abandoning their assigned posts within the dormitory and jail facilities, and/or fail to intervene to stop inmate-on-inmate assaults.

56.     Defendant CITY OF NEW YORK is further aware (from lawsuits, prior incidents, including arrests and convictions of correction officers, notices of claims, media coverage, investigations conducted by and complaints filed with the City's Inspector General's Office and Department of Investigation, and from intelligence gathered by Department of Correction officials) that many DOC officers, including the Defendants, often allow and, at times, engage inmates to fight and assault other inmates.

57.     For example, on April 8, 2008, *The Village Voice* published an article entitled "*Rikers Island Fight Club,*" which detailed how "guards at Rikers Island [are] encouraging inmates to attack other inmates to enforce rules…" (http://www.villagevoice.com/news/rikers-island-fight-club-6388180).

58.     Moreover, on August 14, 2013, *The Village Voice* published an article entitled "*Rikers Fight Club: Correction Staff Let Melee Go For Over An Hour Without Stopping It; Four Inmates Badly Slashed,*" which detailed a fight amongst inmates that "was allowed by correction staff to continue for over an hour without intervention…" (http:www.villagevoice.com/news/rikers-fight-club-correction-staff-let-melee-go-for-over-an-hour-without-stopping-it-four-inmates-badly-slashed-6720156).

59.     Upon information and belief, in the months and years prior to the brutal assault on Plaintiff, numerous physical altercations occurred amongst inmates in DOC custody as a result of the failure of DOC and its corrections officers and supervisors to actively supervise inmates.

60.     Defendant CITY OF NEW YORK is further aware that such improper training and practices have often resulted in a deprivation of civil rights.  Despite such notice, Defendants CITY OF NEW YORK and DOC have failed to take corrective action, which caused the violation of Plaintiff's civil rights.

61.     Moreover, upon information and belief, Defendants CITY OF NEW YORK and DOC was aware, prior to the incident, that the individual Defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as DOC officers.  Despite such notice, Defendants CITY OF NEW YORK and DOC has retained these officers, and failed to adequately train and supervise them.

62.     All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under the color of state law.

63.     All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed under the Eighth and Fourteenth Amendments to the Constitution of the United States of America, and violate 42 U.S.C. 1983.

64.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as DOC officers and supervisors, with the entire actual and/or apparent authority attendant thereto.

65.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as DOC officers, pursuant to the policies, customs, usages, practices, procedures, and/or rules of the CITY OF NEW YORK and the DOC, all under the supervision of ranking officers of said department.

66.     As a result of the foregoing, Plaintiff sustained, *inter alia*, severe physical and psychological injuries, pain and suffering, emotional distress, and deprivation of his

constitutional rights.

67.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## Federal Claims

### AS AND FOR A FIRST CAUSE OF ACTION
(Deliberate Indifference to Substantial Risk of Serious Harm under 42 U.S.C. § 1983)

68.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

69.     Defendants knew of and disregarded the excessive risk of harm to Plaintiff's health and safety by failing to actively supervise Plaintiff and other inmates in the West 19 Lower B-side dormitory.

70.     As a result of the aforementioned conduct of Defendants, Plaintiff was severely injured by other inmates and sustained serious physical injuries.

71.     In committing the acts and omissions complained of herein, the individual Defendants acted under color of state law to deprive Plaintiff of certain constitutionally protected rights under the Eighth and Fourteenth Amendments to the United States Constitution.

72.     As a direct and proximate result of the individual Defendants' deprivation of Plaintiff's constitutional rights, Plaintiff suffered the injuries and damages set forth above.

73.     The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

74.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual

Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Failure to Intervene under 42 U.S.C. § 1983)

75.     Plaintiff repeats, reiterates and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

76.     Defendants had an affirmative duty to intervene on behalf of Plaintiff whose constitutional rights were being violated in their presence by other Defendant DOC officers who were deliberately indifferent to Plaintiff's safety and failed to protect Plaintiff.

77.     The Defendants failed to intervene to prevent the unlawful conduct described herein.

78.     As a result of the foregoing, Plaintiff was put in fear of his safety, and subjected to unjustified physical abuse.  Further, Plaintiff sustained severe and permanent physical injuries.

79.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Supervisory Liability under 42 U.S.C. § 1983)

80.     Plaintiff repeats, reiterates and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

81.     The supervisory Defendant personally caused Plaintiff's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees and by failing to properly supervise inmates in

their care, custody and control.

82.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

**AS AND FOR A FOURTH CAUSE OF ACTION**
(Municipal Liability under 42 U.S.C. § 1983)

83.    Plaintiff repeats, reiterates and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

84.    The aforementioned customs, policies, usages, practices, procedures and/or rules of the CITY OF NEW YORK and DOC included, but were not limited to, failing to protect inmates when Defendants knew of and disregarded the excessive risk of harm to an inmate's health and safety posed by failing to supervise inmates by, *inter alia,* abandoning observation posts, and by failing to intervene in inmate-on-inmate assaults and/or sanctioning inmate-on-inmate assaults.

85.    In addition, the CITY OF NEW YORK engaged in a policy, custom and/or practice of inadequate screening, hiring, retaining, training and supervising its employees that was the moving force behind the violation of Plaintiff's rights as described herein. As a result of the failure of the CITY OF NEW YORK to properly recruit, screen, train, discipline, and supervise its officers, including the individual Defendants, Defendant CITY OF NEW YORK has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

86.    The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and DOC constituted deliberate indifference to the safety, well-being

13

and constitutional rights of Plaintiff.

87.     The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and DOC were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

88.     The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and DOC were the moving force behind the Constitutional violations suffered by Plaintiff as alleged herein.

89.     As a result of the foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and DOC, Plaintiff was brutally assaulted and suffered serious and permanent physical injuries.

90.     Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating Plaintiff's constitutional rights.

91.     All of the foregoing acts by Defendants deprived Plaintiff of federally protected rights, including, but not limited to, rights protected by the Eighth and Fourteenth Amendments to the United States Constitution.

92.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## State Law Claims

### AS AND FOR A FIFTH CAUSE OF ACTION
(Violations of the Constitution of the State of New York)

93.     Plaintiff repeats, reiterates and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

94.     Defendants subjected Plaintiff to the foregoing acts and omissions without due process of law, thereby depriving Plaintiff of rights, privileges, and immunities guaranteed by Article 1 §§ 5 and 6 of the New York State Constitution.

95.     As a direct and proximate result of Defendants' deprivations of Plaintiff's rights, privileges, and immunities guaranteed by the New York State Constitution, Plaintiff suffered the injuries and damages set forth above.

96.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

**AS AND FOR A SIXTH CAUSE OF ACTION**
<u>(Negligence under the laws of the State of New York)</u>

97.     Plaintiff repeats, reiterates and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

98.     Plaintiff's injuries herein were caused by the carelessness, recklessness and negligence of the Defendants, who were acting in the scope of their employment when they engaged in the wrongful conduct described herein and breached the duty of care they owed Plaintiff.

99.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A SEVENTH CAUSE OF ACTION
<u>(Gross Negligence under the laws of the State of New York)</u>

100.    Plaintiff repeats, reiterates and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

101.    Plaintiff's injuries herein were caused by the gross negligence of the Defendant City and its employees and agents, who were on duty and acting in the scope of their employment when they engaged in the wrongful conduct described herein.

102.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
<u>(Negligent Screening, Hiring, and Retention under the laws of the State of New York)</u>

103.    Plaintiff repeats, reiterates and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein

104.    Upon information and belief, Defendant City failed to use reasonable care in the screening, hiring and retention of the aforesaid Defendants.

105.    Defendant City knew, or should have known in the exercise of reasonable care, the propensities of the individual Defendants to engage in the wrongful conduct heretofore alleged in the Complaint.

106.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A NINTH CAUSE OF ACTION
(Negligent Training and Supervision under the laws of the State of New York)

107.    Plaintiff repeats, reiterates and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

108.    Upon information and belief the Defendant City failed to use reasonable care in the training and supervision of the aforesaid Defendants.

109.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A TENTH CAUSE OF ACTION
(*Respondeat Superior* liability under the laws of the State of New York)

110.    Plaintiff repeats, reiterates and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

111.    Defendant City is vicariously liable for the acts of its employees and agents who were on duty and acting in the scope of their employment when they engaged in the wrongful conduct described herein.

112.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

**WHEREFORE**, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the Defendants:

(A)    full and fair compensatory damages in an amount to be determined by a jury:

(B)    punitive damages against the individual Defendants in an amount to be determined by a jury:

(C)    reasonable attorney's fees and the costs and disbursements of their action; and

(D)    such other and further relief as appears just and proper.

Dated: Brooklyn, New York
       April 17, 2017                 By:    s/_____
                                         Jason Leventhal
                                         Leventhal Law Group, P.C.
                                         45 Main St., Suite 528
                                         Brooklyn, New York 11201
                                         (718) 556-9600

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X

CHRISTOPHER WILLIAMS,

        Plaintiff,        Index No.:

   -against-

CITY OF NEW YORK,
GRACE GREAVES, Individually,
FURREL CANTEEN, Individually,
SHAEQUANA BRAITHWAITE, Individually,

        Defendants.

--------------------------------------------------------------------------------X


**COMPLAINT**


**LEVENTHAL LAW GROUP, P.C.**
*Attorneys for the Plaintiff*
45 Main Street, Suite 528
Brooklyn, New York 11201
(718) 556-9600