UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
CHRISTOPHER WILLIAMS,

- against -

THE CITY OF NEW YORK et al.,

Defendants.
------------------------------------------------------------ x

**MEMORANDUM & ORDER**

17 CV 2303 (RJD) (SMG)

DEARIE, District Judge

Plaintiff Christopher Williams was a pre-trial detainee at the Anna M. Kross Center ("AMKC") on Rikers Island from approximately January 7 to January 17, 2016. Williams alleges that during that time, the City of New York (the "City") and other related Defendants engaged in a practice at the AMKC and other Department of Corrections ("DOC") facilities (collectively, the "DOC Facilities") known as "cross-tour" supervision ("cross-touring"[1]). Cross-touring reduced the level of correctional supervision over pre-trial detainees and inmates housed in the DOC Facilities. Among other legal and equitable remedies,[2] Williams seeks a preliminary injunction pursuant to 42 U.S.C. § 1983 to prevent future cross-touring.

Williams argues that by cross-touring, Defendants have (1) failed to ensure adequate supervision and protection for Williams and similarly situated pre-trial detainees and inmates, (2) caused an increase in inmate-on-inmate violence, and (3) created unconstitutional conditions of

---

[1] Cross-touring occurs when a corrections officer, stationed on the floor of a prison housing unit (the "B" post officer), simultaneously supervises two physically separate sections of the unit. Plaintiff Mem. in Support of Mot. for Prelim. Injunction ("Plaintiff Mem."), ECF No. 19, at 8-10. In order to patrol both units, the "B" post officer moves back and forth between them, rather than dividing the supervisory responsibility with a second officer (the "C" post officer). Id. Meanwhile, an officer stationed in a separated "control room" or "bubble" (the "A" post officer), supports the cross-touring officer through audiovisual communication and oversight. See Def. Mem. in Opp'n to Plaintiff Mem. ("Def. Mem."), ECF No. 24, at 2; but see Plaintiff Mem., ECF No. 19, at 11.
[2] Williams also brings claims for damages against the individual Defendants under the Eighth and Fourteenth Amendments, as well as pendant state law damages claims. Currently before the Court is Williams' request for injunctive relief on the basis of his constitutional claims.

confinement, in violation of the Eighth and Fourteenth Amendments of the U.S. Constitution,[3] as well as under New York State law. See Plaintiff Mem. in Support of Mot. for Prelim. Injunction ("Plaintiff Mem."), ECF No. 19, at 2-3. Williams alleges that from January 7 to January 17, 2016, DOC officers assigned to his unit "routinely abandoned their post." Id. at 10. More specifically, he alleges that on January 17, 2016, Defendant Furrel Canteen was assigned to a cross-tour duty in Williams' open dormitory unit at the AMKC, which housed more than 20 inmates. Plaintiff Mem., ECF No. 19, at 10. While Defendant Canteen was absent from Williams' unit, on a cross-tour, Williams was brutally attacked by approximately six inmates in the dormitory bathroom. Id. Williams claims that his resulting physical and emotional injuries were caused by the City's cross-touring practice.[4] Id. Defendants assert that the harm Williams alleges does not amount to a violation of the U.S. Constitution.[5] Def. Mem. in Opp'n to Plaintiff Mem. ("Def. Mem."), ECF No. 24, at 3. They also note that the violence Williams experienced cannot be linked to cross-touring,[6] because it occurred in one of the housing unit bathrooms,

---

[3] The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; see also Johnson v. Connolly, 378 F. App'x 107, 108–09 (2d Cir. 2010) (summary order) (quoting Farmer v. Brennan, 511 U.S. 825, 857 (1994)) ("The Eighth Amendment guarantees each prisoner that reasonable measures will be taken to ensure his safety."). While the Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), "an inmate does not have a right to be confined to the prison of his own choosing," Kinlaw v. Walsh, No. 10-CV-7539 RMB, 2011 WL 2015560, at *2 (S.D.N.Y. May 18, 2011) (internal quotation marks and citations omitted). While the Eighth Amendment's protections and right to be free from cruel and unusual punishment only apply to convicted prisoners, pretrial detainees enjoy the same rights under the Due Process Clause of the Fourteenth Amendment. Butler v. Suffolk Cty., 289 F.R.D. 80, 92 (E.D.N.Y. 2013) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979) ("[t]he same legal standard governs conditions-of-confinement claims brought under the Eighth and Fourteenth Amendments.") (citations omitted).
[4] Williams explains that the suffered a fractured jaw, which required surgical repair, and a laceration that required staples. Plaintiff Mem. at 10.
[5] The parties agree that cross-touring has, in the past, been utilized in the AMKC and other detention centers run by the DOC at Rikers Island (collectively, the "DOC Facilities"). They disagree about for how long, and in which of the DOC Facilities, the New York State Commission of Correction ("SCOC") sanctioned the use of cross-touring. Compare Plaintiff Mem., ECF No. 19, at 4-8, with Def. Mem., ECF No. 24, at 2-3, 6, 9.
[6] Cross-touring was approved by the SCOC until 2015, when the SCOC started to issue citations to DOC Facilities that failed to comply with the "active supervision" requirements of the New York State Codes, Rules and Regulations, Sections 7003.3(a) and 7003.2(a). See Def. Mem., ECF No. 24, at 3. In response to these citations, the DOC instructed the wardens at the Anna M. Kross Center, the Brooklyn Detention Center (BKDC), and the Vernon C. Bain Center (VCBC) to incorporate "C" post staffing and thereby eliminate cross-touring. Id.

which, according to DOC policy, are never patrolled by corrections officers. Id. at 3. Defendants also assert that cross-touring has been discontinued, as evidenced by recently submitted DOC staffing charts. See Def. Submission (Dec. 26, 2017); Def. Mem., ECF No. 24, at 6, 9.[7]

The Court held a hearing and oral argument in this case on December 20, 2017. The parties declined to present witness testimony. See Letter from Christopher Williams Regarding 12/6/2017 Hearing, ECF No. 26.

Williams is skeptical that cross-touring has been permanently eliminated. Plaintiff Third Supp. Reply, ECF No. 46, at 1.[8] He insists that the City's recent staffing changes were made in response to this litigation. He also suggests that there is—at minimum—an unreasonable risk that cross-touring will resume at any time.[9] See id. at 1-2. For the reasons explained below, we disagree. Williams' request for a preliminary injunction is denied.

## DISCUSSION

### A. Justiciability Concerns

We address two threshold issues—standing and mootness—before evaluating Williams' request for relief.[10] First, we are skeptical that Williams has standing to serve as class

---

[7] Active supervision is required in facilities with more than 20 inmates. See N.Y. Codes, Rules and Regulations ("NYCRR") § 7003.2. It is defined as "the immediate availability to prisoners of facility staff responsible for the care and custody of such prisoners" and requires "continuous operation of a security post within [a] housing area," "the ability of staff to respond immediately to emergency situations," and "uninterrupted ability to communicate orally with and respond to each prisoner unaided by [] electronic or other artificial amplifying device[s]." Id.
[8] Defendants Motion to Strike (ECF No. 47) Williams' Reply of December 28, 2017 (ECF No. 46) is denied.
[9] Williams' position on the status of cross-touring in the DOC facilities at issue is unclear. In his most recent submission, he focuses on the fact that Defendants' "post-litigation remedial measures" have not persuaded the Court that cross-tour supervision "cannot reasonably be expected to start up again." Plaintiff's Reply (Dec. 28, 2017), ECF No. 46, at 4 (citing Davis v. City of New York, 812 F. Supp. 2d 333, 339 (S.D.N.Y. 2001)). At the same time, Williams "disputes if [cross-touring] has even ended." Id. at 3.
[10] Williams also intends to bring this case as a class action. He suggests that the putative class is comprised of similarly situated pre-trial detainees and inmates at DOC Facilities that engaged in cross-touring. Am. Compl. ¶¶ 93-105 (action brought on behalf of "all inmates at DOC Facilities where cross-tour supervision is practiced in dormitory-style housing areas with more than 20 inmates"). Williams' summarizes claims brought against the City

3

representative, given that he is no longer incarcerated. See U.S. Const., art. III § 2; see also Cooper v. U.S. Postal Serv., 577 F.3d 479, 489 (2d Cir. 2009) (citations omitted) (article III requires that "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision."); Allen v. Wright, 468 U.S. 737, 751 (1984).

We also find that Williams' claim for injunctive relief is moot. Cf Maneely v. City of Newburgh, 208 F.R.D. 69, 72–74 (S.D.N.Y. 2002) (citations omitted). Defendants have demonstrated, to the Court's satisfaction, that the City has voluntarily provided the relief Williams seeks by eliminating cross-touring in the DOC Facilities. See Plaintiff Third Supp. Reply, ECF No. 46, at 5. It is true that "a defendant's voluntary cessation of a challenged [unconstitutional] practice does not deprive a federal court of its power to determine the legality of that practice." Maneely, 208 F.R.D. at 72–74 (quoting Friends of the Earth v. Laidlaw Envtl. Servs, Inc., 528 U.S. 167, 189 (2000)); see also Los Angeles Cty v. Davis, 440 U.S. 625, 631 (1979). A court must have discretion to ensure that the defendant is not "free to return to his old ways." See Friends of the Earth, 528 U.S. at 170 (internal quotation marks and citations omitted); see also Rivers v. Doar, 638 F. Supp. 2d 333, 337 (E.D.N.Y. 2009). Still, a case can be mooted if "subsequent events ma[k]e it absolutely clear," or the defendant can show "no reasonable expectation that the alleged violation will recur." Friends of the Earth, 528 U.S. at 170, 189 (internal quotation marks and citations omitted). The party opposing a preliminary

---

by three other inmates, all of whom allege that they experienced inmate-on-inmate violence at the AMKC or the VCBC while an officer was cross-touring. See Plaintiff Mem., ECF No. 19, at 10-11. Williams has not specifically identified any other members of the putative class, though he explains that they are "pre-trial detainees and convicted inmates who are confined in housing unites exceeding 20 inmates and are not secured in individual housing units" who are entitled to active supervision. See id. at 1. Nor has he filed a motion for class certification. Until he files his motion to certify, we reserve judgment on this issue.

4

injunction bears the "very heavy burden of demonstrating (1) with assurance that there is no reasonable expectation that the conduct will recur...*and* (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Comer v. Cisneros, 37 F.3d 775, 800 (2d Cir. 1994) (internal quotation marks and citations omitted). For the time being, at least, Defendants have satisfied this burden.[11]

The City represents that it has now permanently staffed "C" post corrections officers in the areas[12] that were previously supervised by only "A" and "B" post officers, and that cross-touring has thus been eliminated. Hrg Tr. (Dec. 20, 2017) at 7:21-8:23; see also Rivers, 638 F. Supp. 2d at 337 (quoting Harrison, 981 F.2d at 59) ("[S]ome deference must be accorded to a state's representations that [the offending] conduct has been discontinued"); but see Friends of the Earth, 528 U.S. at 709-10 (discussing presumption used to "refute assertion of mootness by a defendant who, when sued in a complaint that alleges presented or threatened injury, ceases the complained-of activity"); Davis v. City of New York, 812 F. Supp. 2d 333, 340 (S.D.N.Y. 2011) (quoting Armstrong v. Ward, 529 F.2d 1132, 1136 (2d Cir.1976)) ("determination of whether there is a reasonable expectation that the wrong will be repeated is not foreclosed by expressions

---

[11] Additional justiciability concerns are also at play, given that Williams is no longer in custody. See Comer v. Cisneros, 37 F.3d 775, 798-99 (2d Cir. 1994) (while standing doctrine requires that a litigant have a "personal stake" at the beginning of a case, mootness doctrine requires that a plaintiff's personal stake continue throughout the pendency of the litigation; additional nuances apply in the context of a class action suit); but see Gerstein v. Pugh, 420 U.S. 103, 110 n. 11, 111 (1975) (explaining that, because "[p]retrial detention is by nature temporary, and it is most unlikely that any [pretrial detainee] could have his constitutional claim decided on appeal before he is either released or convicted," claims brought by pretrial detainees may be saved from mootness if they are "capable of repetition, yet evading review.").

[12] At the hearing held on December 20, 2017, Mr. Ashanti indicated that the City has permanently staffed corrections officers in all areas previously affected by cross-touring. Hrg Tr. (Dec. 20, 2017) at 7:21-8:23. He referenced Exhibit 5 of his Declaration of October 25, 2017, ECF No. 27-5, as evidence to that effect. Id. at 8:3-10. However, that exhibit is merely a request for additional fiscal year 2018 funding for the AMKC. It is unsigned and does not indicate that funding was ever granted by the DOC Bureau Chief/Deputy Commissioner, or that it was requested or granted for any other facilities. Although the Court has not received an updated budget from the City indicating that its staffing solution has been permanently funded, as opposed to utilizing overtime or temporary budgetary resources, the Court is satisfied with the City's representations and evidence indicating that "C" post officers are in fact staffed in the areas previously affected by cross-touring.

of intention by [] officials."). The assertions made by the City in its briefing (ECF Nos. 19, 32, 35, 39, and 46), in affidavits, declarations, and submissions in support thereof, and at the hearing held before the Court on December 20, 2017, satisfy us that the City's "allegedly wrongful behavior"—in this case, cross-touring—"c[an][]not reasonably be expected to recur," and that the effects of cross-touring have been eliminated. See Friends of the Earth, 528 U.S. at 170; see also Fisher v. Koehler, 692 F. Supp. 1519, 1566 (1988) (internal quotation marks and citations omitted). In making these findings, the Court relies, *inter alia*, upon the following representations in the City's papers:

- (1) Documentation indicating that after May 2016, the AMKC temporarily staffed "C" post officers with funds from its overtime budget and sought Fiscal Year 2018 funding to instate full-time "C" post officers. See Ashanti Decl., ECF No. 27, Ex. 5-6.

- (2) A memorandum of October 16, 2017, noting modifications to the AMKC's Table of Organization, in particular, the addition of "C" post staffing. See Ashanti Decl., ECF No. 27, Ex. 8.

- (3) Security Memoranda issued to the Otis Bantum Correctional Center on September 6, 2016, and the Vernon C. Bain Center on April 27, 2017, noting that cross-tour supervision is prohibited. See Ashanti Decl., ECF No. 27, Ex. 7.

- (4) Affidavit of Max'Solaine Mingo, DOC Bureau Chief of Facility Operations 'A', including the Anna M. Kross Center, Brooklyn Detention Center, George R. Vernon Center, Manhattan Detention Center, Vernon C. Bain Center, Bellvue Hospital Prison Ward, Elmhurst Hospital Prison Ward, Brooklyn Courts, Manhattan Courts, and Richmond County Courts, indicating that "[w]ith the addition of the "C" post officers [at the AMKC], the Department has eliminated 'cross tours', the use of a single officer patrolling two dormitories in each housing area with more than 20 inmates." Mingo Aff., ECF No. 38, ¶ 8. In addition, the fourth floor housing unit at the BKDC added a "C" post officer. Mingo Aff., ECF No. 38, ¶ 9.

- (5) Affidavit of Angel Villanova, Bureau Chief of Administration and Acting First Deputy Commissioner, noting that in May 2016, he "mandated the Wardens of [the] AMKC and other affected facilities through their chain of command...to ensure that active supervision was being conducted in all of the required housing areas within the affected facilities, including AMKC. Further, on October 16, 2017, [he] approved overtime as an immediate measure to support the required

6

staffing levels. Pursuant to [his] mandate, the Bureau Chief and the Wardens under her charge immediately implemented this change by incorporating it into their staffing assignments so as to re-staff the "C" post assignments pursuant to the SCOC's shift in supervisory direction. Accordingly, the employment of a single officer patrolling two dormitories with more than 20 inmates in each housing area has ceased." Villanova Aff., ECF No. 26, ¶¶ 8-11.

- (6) Affidavit of Ronald Greenberg, DOC Director of Compliance and Inspection, explaining that on March 22, 2016, the SCOC informed the Department that it was rescinding the previously approved "C" post elimination plan at the AMKC. Greenberg Aff., ECF No. 25, ¶ 9. In response, the Department submitted proposals to maintain staffing and make structural changes to the control room, and applied for funding to do so. Id. ¶ 10. "[I]n the interim, the Department authorized temporary ["C" posts]...[More] [r]ecently, the Department modified AMKC's staffing level to allocate "C" posts in areas that were found to be deficient." Id. ¶ 10-11. The DOC also sought "monetary funds to fill these new "C" post allocations with staff...[and] the Chief of Administration [] approved overtime to fill the "C" posts as an immediate measure to address the SCOC's findings." Id. ¶¶ 10-12.

- (7) Supplementary documentation, submitted at the Court's direction, representing the "current staffing and organizational landscape" at the DOC, including Tables of Organization as of October and December 2017 for the George Motchan Detention Center, Vernon C. Bain Center, Brooklyn Detention Complex, Brooklyn Courts, Anna M. Kross Center, and Rose M. Singer Center. See Def. Submission (December 26, 2017).[13] These Tables of Organization indicate the addition of "C" posts in "each area where there are opposing housing areas." Id. at 1.

Williams argues that the City's past cross-touring practices and recent changes made to them after the onset of this litigation—at times with and at times without approval from the SCOC[14]—pose a *future* risk to pre-trial detainees and inmates at the DOC Facilities, sufficient to justify an exception to the mootness doctrine. See Plaintiff Mem., ECF No. 19, at 4-8; Plaintiff

---

[13] Defendants include in their December 26, 2017 submission a "confidential teletype order" listing personnel assigned to various facilities as of November 21, 2017. Given that all details other than the names of the facilities have been redacted, the teletype is of no use to the Court.

[14] Defendants offer evidence indicating that on June 23, 1997, the SCOC approved the elimination of "C" post officers in six housing units in the West facility: the Anna M. Kross Center, Adolescent Reception and Detention Center, George Motchan Detention Center, Rose M. Singer Center, Vernon C. Bain Center, and North Infirmary Control. See Ashanti Decl., ECF No. 27, Ex. 1, Ex. 2.

7

Third Supp. Reply, ECF No. 46, at 1-2, 5. We are unconvinced. We recognize that Defendants have failed to provide records of "C" post staffing for all of the DOC Facilities, or to demonstrate that funding has been allocated for permanent, as opposed to temporary, "C" post staffing. See Def. Submission (December 26, 2017). Still, while the potential gravity of the situation warranted greater clarity from Defendants in their most recent submission, the record is devoid of any evidence, statistics, or research suggesting that—absent our intervention— Defendants' discontinued cross-touring practices are likely to be reinstated. Cf Plaintiff Third Supp. Reply, ECF No. 46, at 3-4; Plaintiff Reply, ECF No. 32, at 3-8 (noting that DOC Facilities have received SCOC citations for cross-touring as recently as 2015 and 2016); but see Rivers, 638 F. Supp. 2d at 337-338 (cases in this Circuit have dismissed as moot challenges to voluntarily abandoned statutes or ordinances where "the record presented no affirmative evidence that the challenged provision would be reenacted") (citing e.g., Granite State Outdoor Advertising, Inc. v. Town of Orange Connecticut, 303 F.3d 450, 451–52 (2d Cir. 2002) ("[T]here is no reason to think that, having completely revised its regulations through proper procedures, the Town has any intention of returning to the prior regulatory regime.")). We are satisfied with the City's assurances that cross-touring or any similar staffing reductions have been discontinued. See Friends of the Earth, 528 U.S. at 193 (quoting City of Mesquite, 455 U.S. 283, 289 (1981)) (defendant's voluntary cessation of challenged practice may not moot case, but "[s]uch abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice").

### B. Williams' Request for Injunctive Relief

Separate and apart from these justiciability concerns, Williams fails to make the showing required to justify the extraordinary remedy of injunctive relief. "The standard for issuance of a

8

preliminary injunction [in this Circuit] is well settled." Glendora v. Hostetter, 916 F. Supp. 1339, 1341 (S.D.N.Y.), aff'd, 104 F.3d 353 (2d Cir. 1996) (citing Resolution Trust Corp. v. Elman, 949 F.2d 624, 626 (2d Cir. 1991)). A plaintiff seeking a preliminary injunction must show that he will suffer "(a) irreparable harm [in the absence of an injunction] and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary [injunctive] relief." Int'l Dairy Foods Ass'n v. Amestoy, 92 F.3d 67, 70 (2d Cir. 1996) (citations omitted); Union Carbide Agr. Products Co., Inc. v. Costle, 632 F.2d 1014 (2d Cir. 1980) (the second of these merits-based tests is the "less onerous of the[] two"). In addition, the plaintiff must show "that the public interest would not be disserved by the issuance of a preliminary injunction." Getty Images (US), Inc. v. Microsoft Corp., 61 F. Supp. 3d 296, 299 (S.D.N.Y. 2014) (citing Salinger v. Colting, 607 F.3d 68, 79–80 (2d Cir. 2010)); see also New York ex. Rel. v. Schneiderman v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015).

Critically, Williams fails to establish that he and the putative class members will suffer actual and imminent irreparable harm absent an injunction. See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) (party seeking preliminary injunction must demonstrate continuing irreparable harm that is "not remote or speculative") (internal quotation marks and citations omitted); see also In re WorldCom, Inc., Securities Litigation, 354 F. Supp. 2d 455, 463, 469 (S.D.N.Y. 2005) ("Irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction.") (internal quotation marks and citations omitted). Williams offers no evidence to suggest that the cross-touring of "B" post officers was the cause of his assault in the AMKC dormitory bathroom, or that it has or will cause broader inmate-on-inmate violence in the DOC Facilities. Although "an allegation of a violation of a

9

constitutional right under the Eight Amendment challenging conditions of confinement in a prison creates a presumption of irreparable harm potentially justifying equitable relief," Zolnowski v. Cty. of Erie, 944 F. Supp. 1096, 1109 (W.D.N.Y. 1996) (citing cases), that presumption is not the end-all of our review, see Donohue v. Mangano, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012) (merely asserting a constitutional injury is "insufficient to automatically trigger a finding of irreparable harm" where the constitutional deprivation is not shown convincingly) (citations omitted).

Rather, we must evaluate the impact of the allegedly unconstitutional practice at issue upon Williams and the prisoners and detainees in his putative class. See Zolnowski, 944 F. Supp. at 1110 (courts must "examine the *actual effect* of challenged conditions upon the [prisoners'] well-being") (citations omitted) (emphasis in original); see also Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996) (that plaintiff suffered "physical effects of his confinement" was an independent basis for conclusion that he would suffer irreparable harm). As is required of all § 1983 plaintiffs, Williams must "prove that the [Defendants' actions were] a proximate cause of [his] injury" and that Defendants "deprived [Williams] of his [federally protected] rights." See Beard v. Town of Monroe, No. 3:13-CV-1714 (JBA), 2015 WL 8023632, at *11 (D. Conn. Dec. 4, 2015), aff'd, 666 F. App'x 62 (2d Cir. 2016) (internal quotation marks and citations omitted) (explaining that § 1983's proximate cause analysis "incorporates common-law tort causation principles"); see also Carmichael v. City of New York, 34 F. Supp. 3d 252, 262, 268-69 (E.D.N.Y. 2014); Rahman v. Fisher, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009).

Williams fails to make this showing. He offers no evidence of "a direct causal link between the [allegedly unconstitutional cross-touring] and the deprivation of [his] federal rights." See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 397 (1997); see also

Gibralter v. City of New York, 612 F. Supp. 125, 131 (E.D.N.Y. 1985) (plaintiff's showing was inadequate where he failed to "allege facts sufficient to suggest the necessary causal link between individual incidents of violence and City's official decision-making bodies"). And he has not demonstrated that Defendants and their policies were or are the "moving force" behind inmate-on-inmate violence in the DOC Facilities. Cf Bd. of Cty. Comm'rs of Bryan Cty., 520 U.S. at 400, 404-05. It is not enough for Williams to simply point to conduct attributable to the City—in this case cross-touring—and claim that it, as opposed to a host of other factors that could encourage inmate-on-inmate violence in the DOC Facilities, violated his constitutional rights. See also Beard, 2015 WL 8023632, at *11 ("A mere possibility of [] causation is not enough." Where the causal link is "one of pure speculation and conjecture, or the probabilities are at best evenly balanced," the court must decide in favor of the defendant)) (internal quotation marks and citations omitted); see also Barreto v. Cty. of Suffolk, No. 10-CV-0028 (JS) (AKT), 2016 WL 5678613, at *9 (E.D.N.Y. Sept. 30, 2016) (plaintiff "failed to adduce evidence, such as statistical data, that the County's housing policy contributes to increased violence.").

We recognize that "a remedy for unsafe conditions need not await a tragic event," Helling v. McKinney, 509 U.S. 25, 33-34 (1993), and that the instances of inmate-on-inmate violence cited by Williams, and that Williams experienced, are unacceptable.[15] They are of great

---

[15] Defendants suggest that Williams fails to prove that any "deliberate indifference was a proximate cause of his injuries" under § 1983, because "[i]t is undisputed that the alleged assault against plaintiff at the hands of fellow inmates occurred in an AMKC bathroom...[and] corrections officers are never stationed in AMKC bathrooms." Def.'s Mem., ECF No. 24, at 16. As a result, they say "even if defendant Furrel Canteen had not been on a cross-tour and had been stationed at the "C" post within plaintiff's housing area of West 19 Lower B, Officer Canteen would not have been present in the bathroom to prevent plaintiff's alleged injuries." Id. at 16-17. Williams argues that corrections officers at the AMKC *do*, at least at times, patrol bathrooms at the facility. See Plaintiff Reply, ECF No. 32, at 18 (citing Williams Decl. ¶ 2) ("[a]lthough a wall separated part of the bathroom area from the bunk area, there were no doors preventing access to either area...DOC officers supervising the West 19 Lower B-side housing unit would occasionally patrol all areas of the housing unit—including the bathroom."). Irrespective of this factual dispute, the causation issue in this case is broader than Defendants make it out to be. Not only is it unclear if an

11

concern to this Court.[16] Nor may fiscal constraints impair the grave responsibility to take all reasonable precautions to insure the safety and dignity of those entrusted to the care of our penal institutions. It may well be that inmate violence is, as a practical matter, unavoidable. But that sad fact of life cannot excuse any level of indifference to such perils. However, the record Williams presents leaves us unconvinced at this point that cross-touring has been a substantial factor in instances of inmate-on-inmate violence in the DOC Facilities. Cf Beard, 2015 WL 8023632, at *11. As a result, the Court's equitable remedies are unavailable to Williams at this juncture.

For the same reasons that he fails to satisfy the irreparable harm prong of the preliminary injunction analysis, Williams is also unable to satisfy even the less burdensome of the two merits-based prongs: demonstrating sufficiently serious question going to the merits of his constitutional claims to make them a fair ground for litigation and a balance of hardships tipping decidedly" towards him.[17] See Int'l Dairy Foods, 92 F.3d at 70; see also Carmichael, 34 F.

---

officer would have patrolled Williams' bathroom area or had relatively immediate access to it—it is unclear whether inmate-on-inmate assault that occurs when officers are on cross-tours is caused by the cross-tours themselves.[15]

[16] See Plaintiff Mem., ECF No. 19, at 12-13 (citing Dep't of Correction, Prelim. Mayor's Mgmt Report (February 2017) at 74, available at http://www1.nyc.gov/assets/operations/downloads/pdf/pmmr2017/doc.pdf (in the relevant period in Fiscal Year 2017, "[s]tabbings and slashings increased by 21 percent while inmate fights increased by 27 percent compared to the same time period last year."); but see Prelim. Mayor's Mgmt Report (February 2018) at 76, available at http://www1.nyc.gov/assets/operations/downloads/pdf/pmmr2018/2018_pmmr.pdf ("[w]hile inmate on inmate violence has presented a challenge in recent years, the first four months of Fiscal 2018 showed improvement in this area. Violent inmate on inmate incidents…declined by 6.4 percent compared to the same period last year…include[ing] a 41.3 percent decrease in stabbings and slashings and an 11 percent decrease in inmate fights.").

[17] Which of the two merits-based standards applies to Williams' request for relief depends on whether the injunction he seeks is characterized as mandatory or prohibitory. When the injunction sought "will alter, rather than maintain, the status quo"—meaning it is "mandatory" rather than "prohibitory" and requires some "positive act," Tom Doherty Assocs. v. Saban Entertainment, Inc., 60 F.3d 27, 34 (2d Cir. 1995), the plaintiff "must demonstrate more than a mere likelihood of success on the merits," Flynn v. Lee, No. 11-CV-5311 (LAP), 2011 WL 5865851, at *2 (S.D.N.Y. Nov. 15, 2011) (citing Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008)). Rather, the plaintiff must demonstrate "a clear or substantial likelihood of success" on the merits. Doninger, 527 F.3d at 47 (internal quotation marks and citations omitted). Meanwhile, when the injunction sought does not require a change to the status quo, it is prohibitory, and the plaintiff must satisfy a less burdensome standard of demonstrating "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Int'l Dairy Foods v. Amestoy, 92 F.3d 67, 70 (2d Cir.

Supp. 3d at 268-69 (when "the causal connection is 'too tenuous,' the constitutional deprivation is not the proximate cause of actual injury."); see also Barreto, 2016 WL 5678613, at *8–9 (quoting Bell v. Wolfish, 441 U.S. 520, 562 (1979)) ("The inquiry of federal courts into prison management must be limited to the issue of whether a particular system violates any prohibition of the Constitution") (internal quotation marks and citations omitted).[18] As a result, we reserve judgment on the merits of Williams' constitutional claims until further discovery takes place.

Finally, Williams is unable to demonstrate that the preliminary injunction would be in the public interest. See Getty, 61 F. Supp. at 296. It is unquestionably in the public interest to ensure that pre-trial detainees and inmates are not subjected to unconstitutional conditions of confinement in our city, state, and federal correctional facilities. However, in light of the aforementioned lack of evidence that cross-touring will resume or that the practice has spawned a demonstrable increase in institutional violence, we are unwilling at this time to interfere with the operations of the DOC and its facilities. See Bell, 441 U.S. at 548, 562 (critical of courts becoming "increasingly enmeshed in the minutiae of prison operations," given that "operation of our correctional facilities is particularly the province of the Legislative and Executive Branches of our Government, not the Judicial"); see also Stewart v. New York City Transit Auth., No. 3-CV-10329 (RWS), 2006 WL 270100, at *9 (S.D.N.Y. Feb. 6, 2006) (noting the "well-

---

1996). Because Williams asks us to require the City to use a staffing model that it already has in place, the preliminary injunction here would maintain, not alter, the status quo. See Tom Doherty, 60 F.3d at 34. It is prohibitory. As a result, Williams must satisfy the "less onerous" of the merits tests. He fails to do so. See Int'l Dairy Foods, 92 F.3d at 70.

[18] Williams asks us to compel Defendants to comply with Sections 7003.3(a) and 7003.2(c) of NYCRR, which prohibit cross-touring in that they mandate "active supervision" of inmates housed in groups twenty or more individuals. See Plaintiff. Third Supp. Reply, ECF No. 47, at 5. Even setting aside the fact that the City is presently complying with these Sections, Williams fails to show that the violation of these Sections results in the constitutional harm he alleges. We cannot mandate Defendants' compliance with these Sections of New York State law.

established rule" that "bars federal courts from interfering with non-federal government operations") (internal quotation marks and citations omitted); Block v. Rutherford, 468 U.S. 576, 584–85 (1984) (prison administrators should be "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security") (internal quotation marks and citations omitted).

The Court reiterates its long-standing concern over the conditions that Williams and other pre-trial detainees and inmates experience in the DOC Facilities. See New York State Commission of Correction, The Worst Offenders: The Most Problematic Local Correctional Facilities of New York State (February 2018), available at http://www.scoc.ny.gov/pdfdocs/Problematic-Jails-Report-2-2018.pdf. But the evidence before the Court fails to demonstrate any effect of the cross-touring practice upon Williams or members of the putative class.[19] See Lareau v. Manson, 507 F. Supp. 1177, 1178 (D. Conn. 1980), aff'd in

---

[19] "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Stewart v. Schiro, No. 13-CV-3613 (NGG) (VMS), 2015 WL 1854198, at *6–7 (E.D.N.Y. Apr. 22, 2015) (quoting Farmer, 511 U.S. at 834). While the Supreme Court "has held that prison officials have a duty to protect prisoners from violent attacks by other inmates," Giano v. Senkowski, 54 F.3d 1050, 1053–54 (2d Cir. 1995) (citing Farmer, 511 U.S. at 833), "the standard for prisoner 'failure to protect' claims brought under 42 U.S.C. § 1983 is quite high," Rivera v. New York, No. 96-CV-7697 (RWS), 1999 WL 13240, at *8 (S.D.N.Y. Jan. 6, 1999). "An inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind...such as deliberate indifference to inmate health or safety." Walker v. Schult, 717 F.3d 119, 225 (2d Cir. 2013).

Furthermore, "[t]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007). The plaintiff "must plead and prove that the actions at issue were proximately caused by an official agency policy or practice which resulted in the violation of plaintiff's constitutional rights." Hodge v. Ruperto, 739 F. Supp. 873, 877 (S.D.N.Y. 1990) (citing Monell v. Dep't of Soc. Srvs of City of New York, 436 U.S. 658, 691 (1978)); see also Gibralter v. City of New York, 612 F. Supp. 125, 131 (E.D.N.Y. 1985) (pleadings were inadequate where "plaintiff d[id] not allege facts sufficient to suggest the necessary causal link between individual incidents of violence and the City's official decision-making bodies").

part, modified in part and remanded, 651 F.2d 96 (2d Cir. 1981) ("In the absence of clearly unconstitutional conditions, the judiciary should not, of course, become involved in the operations of correctional institutions. The day-to-day administration of such institutions is a matter for professional administrators, not judges.").

In this case, past practices, now abandoned, present no risk of enhanced danger to residents of the DOC Facilities. The Court is persuaded by the documentary evidence and representations of counsel that cross-touring has been permanently discontinued and that an injunction is unnecessary to ensure that the City does not reinstate cross-touring in its facilities. We caution the City and its corrections officials that we will not hesitate to reconsider the matter should the City's representations made not be realized as indicated. Judicial remedies are not foreclosed, should discovery reveal evidence that cross-touring or any similar practice presents an intolerable danger to the custodial population. See Friends of the Earth, 528 U.S. at 193,195 (quoting Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 222 (1974)) ("[d]enial of injunctive relief does not necessarily mean that the district court has concluded there is no prospect of future violations to deter...[and the] federal courts should aim to ensure 'the framing of relief no broader than required by the precise facts.'")

## CONCLUSION

For the reasons explained above, the Court finds that a preliminary injunction is unwarranted. Williams' motion is denied.

SO ORDERED:

_____
Raymond J. Dearie
United States District Judge

Dated: April 13, 2018
Brooklyn, New York